

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| DANIEL R. MCGUIRE, | ) | No. ED102773 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Robert H. Dierker, Jr. |
| JAMES J. LINDSAY, SUSAN J. GRAY, | ) | |
| MAC MEETINGS & EVENTS, L.L.C., and | ) | |
| 1509 NORTH BROADWAY, L.L.C., | ) | |
| | ) | |
| Appellants. | ) | FILED: May 17, 2016 |

## Introduction

Appellants (referred to collectively as "Lindsay") appeal the judgment of the trial court entered after a bench trial. The individual parties to this appeal, Daniel McGuire ("McGuire"), James Lindsay ("Lindsay"), and Susan Gray ("Gray") are the sole Members of MAC Meetings & Events, L.L.C. ("MAC"). The trial court found that Lindsay and Gray, in their capacity as Managers[1] of MAC, breached MAC's Operating Agreement by hiring Lindsay as a salaried employee. Lindsay's appeal focuses primarily on two issues. First, Lindsay argues that the trial court committed reversible error by relying on a report prepared by the Special Master appointed to make an accounting of MAC's financial records because the trial court failed to administer an

---

[1] "Managers," as defined in MAC's Operating Agreement, have specific powers that include hiring employees.

oath to the Special Master as required by Rule 68.01(d). Second, Lindsay argues that the trial court erred in interpreting MAC's Operating Agreement to preclude the payment of a salary to Lindsay. Lindsay also raises two points arguing that the trial court erred in admitting parol evidence and hearsay into evidence at trial.

Because the trial court complied with the requirements of Rule 68.01(d) in administering the oath to the Special Master, the trial court did not commit reversible error in relying on the Special Master's report. Because MAC's Operating Agreement unambiguously prohibits Lindsay from receiving payment for services rendered to MAC, the trial court did not err in finding that MAC's payments to Lindsay were over-distributions to Lindsay, and ordering Lindsay to return the over-distribution to MAC. Finally, assuming arguendo that the trial court improperly admitted parol evidence and hearsay, such evidence was harmless because other competent and substantial evidence supported the trial court's judgment. Accordingly, we affirm the trial court's judgment.

Factual and Procedural History

I.    **MAC Meetings & Events, L.L.C.**[2]

MAC is a Missouri limited liability company consisting of three Members: McGuire, Lindsay, and Gray. MAC is primarily engaged in organizing, planning, and presenting business gatherings, conventions, and other "events." Under the Operating Agreement's "Sharing Ratio," McGuire and Lindsay each receive 48.78% of MAC's distributions, and Gray receives the remaining 2.44%.

MAC was created in 2001. The original Members of MAC were McGuire, Lindsay, Gray, and Patricia Schaumann ("Schaumann"). At that time, McGuire and Lindsay each

---

[2] While 1509 North Broadway, L.L.C., is a party on appeal, none of the issues here directly relate to that company.

2

received 40% of MAC's distributions, Schaumann received 18%, and Gray received 2%. When MAC was initially organized as an L.L.C., Schaumann and Gray were hired as employees of MAC and were paid a salary.

MAC's original Operating Agreement was amended in 2005. Both the original and the amended Operating Agreement contained identical versions of the relevant language in Sections 5.1[3] and 7.2(D), which state:

> 5.1   Exercise of Management.
>
> A.   Except as otherwise provided in this Agreement, the management and control of the business and affairs of the Company shall be vested exclusively in the Managers, who shall have the right and authority to manage the affairs of the Company and make all decisions with respect thereto. In addition to the rights and duties of the Managers set forth elsewhere in this Agreement, but subject to the other provisions of this Agreement, the Managers are hereby authorized to:
>
>> (i)   Control the day to day operations of the Company;
>>
>> (ii)   Hire or appoint employees, agents, independent contractors, or officers of the Company;
>
> …
>
> [7.2(D)] Payments to Members for Services: The Members shall not receive any sums of money for services.

(Underlining in original.)

The "Managers" of MAC, as defined in Section 5.1, changed numerous times throughout the years. Lindsay and Schaumann were the original Managers in 2001. Schaumann vacated her position as Manager when she left the company in 2007. As of 2011, Lindsay and Gray were the Managers.

In 2011, Lindsay's role with MAC transitioned from handling small responsibilities related to the upkeep of the books and records of MAC to a more substantial operational role. In

---

[3] All "Section" references are to the MAC Operating Agreement.

3

connection with this change, trial court found that Lindsay and Gray, in their capacity as Managers of MAC, made Lindsay a salaried employee. MAC paid Lindsay a salary and health insurance benefits for his services, and also paid the employment taxes associated with his salary.

## II.    Underlying Lawsuit

McGuire filed suit alleging two counts for equitable accounting and injunctive relief. In the lawsuit, McGuire alleged *inter alia* that Lindsay, as a Member of MAC, received improper payments from MAC by virtue of being paid a salary. On July 3, 2013, the trial court entered an interlocutory order for an accounting and appointed Jack Fitter, CPA, PC, as a special master ("Special Master") to conduct the accounting. On February 25, 2014, the Special Master filed his report with the trial court. Shortly thereafter, Lindsay filed exceptions to the report, claiming *inter alia* that the Special Master failed to take the oath required by Rule 68.01(d) before investigating and authoring the report. At a hearing conducted on March 5, 2014, the trial court acknowledged this fact and administered the Special Master's oath that day:

> THE COURT:     Do you solemnly swear that you faithfully heard and examined the matters at issue, and made a just and impartial and true report in accordance with the order of appointment and reference?
> MR. FITTER:     I do.

On May 6, 2014, the trial court held a hearing and called the Special Master as the Court's expert witness. The trial court permitted plaintiff's counsel and defense counsel to cross-examine the Special Master. The trial court reserved ruling on whether to adopt the Special Master's report and proceeded to trial on the merits. Before trial, Lindsay filed a motion to strike the Special Master's report, which the trial court denied.

4

## III. Trial

The trial court held a bench trial on McGuire's petition on August 4, 2014. McGuire, Lindsay, and Gray testified. A key issue in McGuire's claims was the payment of a salary to Lindsay. McGuire contended that Section 7.2(D) of the Operating Agreement prohibited Lindsay from receiving a salary for his services because he was a member of MAC. Lindsay countered that Gray and Schaumann, who were also Members of MAC, had been paid as salaried employees since MAC was formed.

During the trial, Lindsay objected to certain portions of McGuire's testimony as violating the parol evidence rule. In describing his understanding of the 2001 Operating Agreement, McGuire testified that the "[o]riginal agreement with [Gray] and [Schaumann] and [Lindsay] and myself was that the two ladies [Gray and Schaumann] would get a salary. They were—they worked there. They—they ran the company." As to McGuire and Lindsay's agreement, McGuire testified, "Our agreement was that [Lindsay] and myself got a quarterly distribution based on net profits of the company ... We were to get no salary. Whatever time we spent there we spent pro bono." The trial court noted defense counsel's objection and stated that it would apply the parol evidence rule as a matter of substantive law.

The trial court allowed other testimony over defense counsel's hearsay objections. First, McGuire testified that all four Members of MAC, including Schaumann, expressly and unanimously agreed that members Gray and Schaumann would become employees and draw a salary at MAC's inception. McGuire also elicited testimony regarding Lindsay's attempt at taking a salary in 2005. McGuire testified that when he learned Lindsay was writing checks to himself, he confronted Lindsay in a meeting of the Members. McGuire testified that Schaumann said it was improper for Lindsay to draw a salary under the Operating Agreement. Lindsay

5

argued that all evidence of Schaumann's out-of-court statements constituted hearsay. The trial court overruled Lindsay's objections and allowed McGuire's testimony.

The trial court also admitted into evidence the Special Master's supplemental calculations of Lindsay's salary and benefits. The supplemental report, admitted as Plaintiff's Exhibit 43, updated the Special Master's report through June 30, 2014, and made other revisions to the original report.

## IV.    Trial Court's Findings of Fact, Conclusions of Law, Order, and Judgment

On February 13, 2015, the trial court issued written Findings of Fact and Conclusions of Law. The trial court found that "Lindsay and Gray, as Managers of the LLC, determined that Lindsay would become an employee of the LLC as of 2011 and be paid a salary accordingly." Relying on the Special Master's report and supplemental accounting, the trial court found that Lindsay received $477,913 in salary and benefits from 2011 to December 31, 2013, and an additional $94,515 in salary from January 1, 2014 to June 30, 2014.

The trial court concluded that Lindsay and Gray "breached the operating agreement of MAC Meetings." The trial court relied upon the language of Section 7.2(D) of the Operating Agreement, which reads, "The Members shall not receive any sums of money for services." The trial court determined that Section 7.2(D) was "unambiguous and admits of no exceptions." The trial court reasoned that "[i]n paying a salary or guaranteed payment to defendant Lindsay, MAC Meetings is in violation of this explicit proviso."

The trial court noted Lindsay's argument that Section 5.1 granted the Managers of MAC the plenary authority to manage and control the business, which Lindsay maintained included unrestrained authority to hire or appoint employees. The trial court observed that the managerial authority of Section 5.1 was "subject to the other provisions of this Agreement." The trial court then concluded that the Managers' authority to hire employees under Section 5.1 was limited by

6

Section 7.2(D) which expressly prohibited Members from receiving "any sums of money for services."

The trial court further addressed the fact that Gray and Schaumann, both Members like Lindsay, drew a salary as employees. The trial court found that the Members unanimously consented to the payment of salaries to Gray and Schaumann, whereas the Members did *not* unanimously consent to the payment of a salary to Lindsay. The trial court further found that the Members either were estopped from complaining about the salaries paid to Gray and Schaumann, or had waived any claim against MAC by failing to seek relief regarding those payments. In any event, the trial court concluded, "The unanimous agreement regarding defendant Gray's salary does not affect the propriety of paying a salary and benefits to defendant Lindsay."

Finally, the trial court found that the salary payments to Lindsay constituted over-distributions to Lindsay and resulted in a corresponding under-distribution to McGuire. Relying on the Operating Agreement's provision for over-distributions, the trial court ordered Lindsay to repay the over-distributions to MAC within 30 days of its order and judgment.[4] This appeal follows.

## Points on Appeal

Lindsay raises four points on appeal. In Point One, Lindsay alleges that the trial court erred in adopting the Special Master's report because the Special Master failed to meet the requirements of Rule 68.01(d). Specifically, Lindsay claims the Special Master did not take and subscribe the required oath before he began his investigation and prepared his report. In Point Two, Lindsay contends that the trial court erred in violating the parol evidence rule by relying on

---

[4] The trial court disposed of additional issues that are irrelevant for this appeal.

7

extrinsic evidence. Specifically, Lindsay alleges that the trial court relied on extrinsic evidence introduced by McGuire that unanimous consent of the Members was required to avoid the limitations of Section 7.2(D) and allow payment of a salary to Lindsay as an employee. In Point Three, Lindsay alleges that the trial court's judgment was against the weight of the evidence because McGuire failed to present sufficient evidence to support the trial court's findings. In Point Four, Lindsay contends the trial court erred in admitting and relying on inadmissible hearsay evidence. Specifically, Lindsay contends that the outcome of the case would have been different had the trial court not relied on Schaumann's out-of-court statements that unanimous Member consent was necessary to allow payment of salaries to Members.

Discussion

## I. Point One—Special Master's Oath

Lindsay argues that the trial court committed reversible error for failing to administer the oath to the Special Master before the Special Master began his investigation and prepared his reports as required by Rule 68.01(d).

### A. Standard of Review

Missouri Supreme Court Rules involve questions of law and are reviewed *de novo*. Lorenzini v. Short, 312 S.W.3d 467, 470 (Mo. App. E.D. 2010). In interpreting a Supreme Court Rule, "we are to ascertain the intent of the Supreme Court, giving the words used their plain and ordinary meaning." In re A.S.O., 75 S.W.3d 905, 910 (Mo. App. W.D. 2002). When a term is not defined in a Rule and has not been interpreted by courts, we should interpret the intent of the Supreme Court from the plain language of the Rule. Lorenzini, 312 S.W.3d at 470.

### B. Special Master's Oath

Rule 68.01(d) states, in full:

> Before proceeding to hear any testimony in the action, a master shall take and subscribe an oath, before some officer duly authorized to administer an oath, faithfully to hear and examine the matters at issue and to make a just, impartial and true report.

This Court has held, "The Rule's plain meaning requires that an oath be taken." R.J. v. S.L.J., 732 S.W.2d 574, 576 (Mo. App. E.D. 1987). Therefore, it is "error for the trial court to have adopted the master's report [if] the master had not taken an oath and the parties had not waived the requirement." Id. at 577.

The trial court appointed the Special Master to provide an accounting of MAC. The Special Master investigated, prepared, and submitted his report to the trial court on February 25, 2014. Lindsay filed objections to the Special Master's report, noting that the Special Master had not been administered the oath required by Rule 68.01(d). Recognizing its error, the trial court administered the following oath to the Special Master on March 5, 2014:

> THE COURT: Do you solemnly swear that you faithfully heard and examined the matters at issue, and made a just and impartial and true report in accordance with the order of appointment and reference?
> MR. FITTER: I do.

On July 15, 2014, the Special Master revised and supplemented the salary schedules contained in his original report. The trial court then relied on portions of the Special Master's report and supplemental calculations in rendering judgment. The issue before us is whether the trial court administration of the oath on March 5, 2014, was timely under Rule 68.01(d).

The text of Rule 68.01(d) contains only one timing requirement as to *when* the oath must be administered. The oath must be administered "[b]efore proceeding to hear any testimony in the action." Rule 68.01(d). As Lindsay points out, "The term 'before' indicates when the oath must be taken, not if the oath need be taken." (Emphasis in original.) See also R.J., 732 S.W.2d at 576 ("The Rule's plain meaning requires that an oath be taken."). The record before us suggests that the Special Master did not "hear any testimony" prior to March 5, 2014. The

9

record does not indicate that the Special Master conducted a hearing where witnesses gave sworn statements. See Black's Law Dictionary 1613 (9th ed. 2009) (testimony is "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition."); Reeves v. McGlochlin, 65 Mo. App. 537, 542 (Mo. App. Kansas City 1896) (upholding enforcement of an arbitration award under R.S. 1889, sec. 399, which provided that "[b]efore proceeding to hear any testimony the arbitrators shall take and subscribe an oath" because "*[t]estimony*, as understood in judicial proceedings, means the statement of a witness made under oath" (emphasis in original)). The record shows that the Special Master reviewed financial documents, relied on previously conducted deposition transcripts, and conducted unsworn personal, telephone, and email interviews. Because the Special Master relied on documents and unsworn interviews, and did not "hear any testimony" as contemplated by Rule 68.01(d), we are not convinced that the timing provision of Rule 68.01(d) is applicable here.[5] Following the plain and express language of Rule 68.01(d), we note that the rule does *not* state that the oath must be taken before the Special Master takes any evidence, examines the matter at issue, or before the Special Master submits its report, but only before the hearing of testimony. Because the Special Master heard no testimony, we consider whether the trial court complied with the remaining requirements of Rule 68.01(d).

The record reflects that the Special Master did "take and subscribe an oath" on March 5, 2014. The trial court was an "officer duly authorized to administer an oath." The Special Master swore that he "faithfully heard and examined the matters at issue, and made a just and impartial and true report." This oath precisely tracks the language of Rule 68.01(d). While the oath was not administered to the Special Master at the time of his appointment, we are not persuaded that

---

[5] Or, viewed in a hyper-technical sense, because the Special Master never heard testimony, the oath *was* administered before the Special Master proceeded to hear any testimony in the action.

10

the subsequent administration of the oath invalidated the Special Master's report or rendered the report otherwise inadmissible. Because the trial court followed the express requirements contained in Rule 68.01(d) by administering the oath to the Special Master, the trial court did not err in relying on the Special Master's report in making its judgment. Point One is denied.

## II.     Point Three—Interpretation of the Operating Agreement

In this point on appeal, which we address out of order for purposes of clarity, Lindsay argues that the trial court's interpretation of the Operating Agreement was erroneous, is unsupported by substantial evidence, and was against the weight of the evidence. The core of Lindsay's argument is that the trial court misinterpreted the Operating Agreement to preclude payments to Lindsay because of his status as a member of MAC. We disagree.

### A.     Standard of Review

In reviewing a trial court's decision in a court-tried equity case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); Pelligreen v. Wood, 111 S.W.3d 446, 450 (Mo. App. E.D. 2003). We acknowledge that the trial court is in a superior position to assess credibility, and, therefore, we defer to the factual findings of the trial court. Mullenix-St. Charles Properties, L.P. v. City of St. Charles, 983 S.W.2d 550, 555 (Mo. App. E.D. 1998). However, we independently assess the trial court's conclusions of law. Id. Important to our analysis, both the existence of an ambiguity and the construction of an unambiguous document are questions of law that we review *de novo*. Rouner v. Wise, 446 S.W.3d 242, 249 (Mo. banc 2014).

### B.     Preservation of Error

As a preliminary matter, we address McGuire's contention that Lindsay has not properly preserved his point that the trial court has misinterpreted the Operating Agreement. Specifically,

11

Rule 84.04(d)(1) requires that, within the Points Relied On section of a brief, the appellant must "identify the trial court ruling or action that the appellant challenges" and "state concisely the legal reasons for the appellant's claim of reversible error."

Here, Lindsay's Point on Appeal contends that the trial court's findings were against the weight of the evidence and unsupported by substantial evidence. However, Lindsay argues throughout multiple points on appeal that the trial court misinterpreted the Operating Agreement in concluding that the agreement prohibited Lindsay from drawing a salary. Despite the mandatory nature of the requirements of Rule 84.04, it is within the discretion of this Court to review non-compliant briefs *ex gratia* where the abandoned claim is readily understandable. See H & B Masonry Co., Inc. v. Davis, 32 S.W.3d 120, 126 (Mo. App. E.D. 2000). Thus, we exercise our discretion to review the trial court's interpretation of the Operating Agreement *ex gratia*.

C.    Interpretation of the Operating Agreement

We interpret an L.L.C.'s operating agreement according to the ordinary rules of contract law. CB3 Enterprises LLC v. Damas, 415 S.W.3d 163, 166 (Mo. App. W.D. 2013). The primary rule in interpreting a contract is to ascertain the parties' intent and give effect to that intent. Storey v. RGIS Inventory Specialists, LLC, 466 S.W.3d 650, 654 (Mo. App. E.D. 2015). We rely on the plain and ordinary meaning of the words in the contract and consider the document as a whole. Id. The clauses must be read in the context of the entire contract, and interpretations that render provisions meaningless should be avoided. Id. at 654–55. We prefer to "attribute a reasonable meaning to each clause and harmonize all provisions, rather than leave some provisions nonfunctional or nonsensical." Id.

"Where a contract is clear and unambiguous, a reviewing court cannot go outside the agreement and make a new contract for the parties." Lehmann v. Bank of Am., N.A., 427

12

S.W.3d 315, 322 (Mo. App. E.D. 2014). The test for ambiguity is whether the disputed language, in the context of the entire agreement, is reasonably susceptible to more than one construction. Zahn v. Zahn, 420 S.W.3d 706, 711 (Mo. App. E.D. 2014). A contract ambiguity "must come from within the four corners of the contract; extrinsic evidence cannot be used to create an ambiguity." AB Realty One, LLC v. Miken Techs., Inc., 466 S.W.3d 722, 730 (Mo. App. E.D. 2015). Where the terms of the contract are clear, we apply the agreement as written and will not supply additional terms. Devino v. Starks, 132 S.W.3d 307, 312 n.4 (Mo. App. W.D. 2004).

The issue on appeal is whether the Operating Agreement allowed Lindsay, a Member of the MAC, to draw a salary for his services when the Managers (Lindsay and Gray) agreed to make him an employee. The Operating Agreement contains two relevant provisions. Section 7.2(D) states in full:

(D)     Payments to Members for Services: The Members shall not receive any sums of money for services.

Section 5.1 states, in relevant part:

5.1     Exercise of Management.

A.     **Except as otherwise provided in this Agreement,** the management and control of the business and affairs of the Company shall be **vested exclusively in the Managers,** who shall have the right and authority to manage the affairs of the Company and make all decisions with respect thereto. In addition to the rights and duties of the Managers set forth elsewhere in this Agreement, **but subject to the other provisions of this Agreement, the Managers are hereby authorized to:**

(i)     Control the day to day operations of the Company;

(ii)     **Hire or appoint employees,** agents, independent contractors, or officers of the Company;

(Underlining in original, bolded emphasis added.)

13

While the parties agree that these provisions are unambiguous, they disagree on the proper construction. Lindsay argues that Section 5.1 grants the Managers of MAC unrestrained authority to hire Lindsay as an employee, stressing that the authority to do so is expressly provided and "vested exclusively" in the Managers. Addressing the limitations of Section 7.2(D), Lindsay posits that the provision prohibits Members from drawing a salary in their capacity "as Members," but does not prohibit Members from drawing a salary in their capacity as an "employee." Conversely, McGuire maintains that Section 7.2(D) is express and unqualified in its prohibition of Members receiving payment for services, which includes any payment for services, regardless of the characterizations of the payment. McGuire emphasizes that authority granted to the Managers under Section 5.1 is expressly "subject to the other provisions of this [Operating] Agreement," including Section 7.2(D), which precludes Managers from hiring and paying salaries to Members as employees.

We agree with the parties that these provisions are unambiguous because the provisions are only subject to one reasonable construction. See Ethridge v. TierOne Bank, 226 S.W.3d 127, 131 (Mo. banc 2007) ("A contract is not ambiguous merely because the parties disagree as to its construction."). Section 7.2(D) is unqualified in its prohibition that Lindsay, as a Member, "shall not receive any sums of money for services." Conversely, Section 5.1 is expressly qualified as being subject to all other provisions in the Operating Agreement, including Section 7.2(D).

Lindsay's desired interpretation of the Operating Agreement requires that this Court supply additional terms to Section 7.2(D) and ignore the existing language in Section 5.1. This we cannot do. Devino, 132 S.W.3d at 312 n.4 (we will not supply additional terms); Storey, 466 S.W.3d at 655 ("Interpretations that render provisions meaningless should be avoided."); Textor Const., Inc. v. Forsyth R-III Sch. Dist., 60 S.W.3d 692, 698 (Mo. App. S.D. 2001) ("[A] court's

14

duty is confined to the interpretation of the contract which the parties have made for themselves, without regard to its wisdom or its folly, and ... *a court may not read into a contract words which the contract does not contain.*") (emphasis added).

Lindsay's interpretation of Section 7.2(D) requires us to supply additional language as noted below: "The Members shall not receive any sums of money for services **in their capacity as Members.**" Similarly, Lindsay's suggested interpretation requires us to ignore the stricken language in Section 5.1 below:

> ~~Except as otherwise provided in this Agreement,~~ the management and control of the business and affairs of the Company shall be vested exclusively in the Managers, who shall have the right and authority to manage the affairs of the Company and make all decisions with respect thereto. In addition to the rights and duties of the Managers set forth elsewhere in this Agreement, ~~but subject to the other provisions of this Agreement,~~ the Managers are hereby authorized to ... Hire or appoint employees.

We are persuaded that McGuire's construction of the Operating Agreement is the only reasonable construction of the Operating Agreement and precludes any member of MAC from receiving payment for services. Because the trial court adopted this interpreation, the trial court did not err in its construction of the Operating Agreement.[6]

We briefly address Lindsay's untenable claim that the trial court's judgment was unsupported by substantial evidence and was against the weight of the evidence. The issue here was entirely a matter of contractual interpretation: whether the Operating Agreement permitted the Managers of MAC to pay Lindsay as a salaried employee. There is no dispute that the Operating Agreement controls, that the Managers (Lindsay and Gray) authorized Lindsay to

---

[6] In the trial court's written judgment, there was a discussion about what was required for a member to be paid a salary. The trial court concluded that an amendment to the Operating Agreement was required to override the unambiguous provisions of Sections 5.1 and 7.2(D). The Operating Agreement contains an amendment provision, Section 11.17. We need not construe Section 11.17 because of the unambiguous nature of the other provisions and because Lindsay does not argue that an amendment provided the authority for his salary.

15

become a salaried employee, and that Lindsay was paid substantiated sums of money for services by MAC. The parties do not dispute the amount that Lindsay received in salary and benefits. Lindsay counters that "uncontroverted evidence demonstrated that MAC had hired and compensated Members as employees since its inception," referring to Gray and Schaumann. We find this argument is unavailing because the Operating Agreement unambiguously prohibits Lindsay from drawing a salary for his services. Lindsay cannot rely on extrinsic evidence relating to Gray and Schaumann to interpret an unambiguous contract or to create an ambiguity. AB Realty One, LLC, 466 S.W.3d at 730.

Because the trial court properly found that MAC's Operating Agreement prohibited Lindsay from being paid a salary for his services, the trial court did not erroneously interpret, declare or apply the Operating Agreement. Further, the trial court's judgment was supported by substantial evidence and was not against the weight of the evidence. Point Three is denied.

## III. Points Two and Four—Parol Evidence and Hearsay

Because Points Two and Four raise evidentiary issues, we consider these points together. In Point Two, Lindsay argues that the trial court improperly relied on parol evidence introduced by McGuire, which suggested that only upon the unanimous consent of all Members could a Member be hired and paid as a salaried employee by MAC. In Point Four, Lindsay argues that the trial court relied on McGuire's inadmissible hearsay statements attributable to Schaumann suggesting (1) that Schaumann consented to hiring Gray and Schaumann as salaried employees in 2001, and (2) that Schaumann believed the Operating Agreement prohibited Lindsay from being paid as a salaried employee in 2005.

As explained above, the trial court's judgment did not erroneously declare or apply the law in its interpretation of the Operating Agreement. Further, the trial court's judgment was supported by substantial evidence, and was not against the weight of the evidence. We reach this

16

conclusion by examining the unambiguous provisions of the Operating Agreement and without reference to the purported hearsay and parol evidence. Even assuming arguendo that the trial court improperly admitted parol evidence and hearsay testimony, the evidence was harmless error because the trial court's judgment was supported by other competent and substantial evidence. The Operating Agreement unambiguously prohibited Lindsay from drawing a salary and the trial court's judgment relied on the Special Master's report to compute the amount that Lindsay was paid in improper salary and benefits. The hearsay and parol evidence was simply unnecessary to support the trial court's judgment. See In re Estate of English, 691 S.W.2d 485, 489–90 (Mo. App. W.D. 1985) (admission of evidence, even if in violation of the parol evidence rule, was not reversible error where the decision was supported by other competent evidence in a court-tried case); Whispering Oaks Farms, LLC v. Lebanon Livestock Auction S & T, LLC, 466 S.W.3d 717, 721 (Mo. App. S.D. 2015) (improper admission of hearsay is reversible only if the complaining party was prejudiced; if other competent and substantial evidence supports the judgment, erroneously admitted hearsay is harmless). Points Two and Four are denied.

## Conclusion

The trial court's judgment is affirmed.

_____
KURT S. ODENWALD, Judge

Angela T. Quigless, J., concurs.
Lisa P. Page, J., concurs.

17