Colleen Dolan, Judge
Peter A. Nicolazzi ("Appellant") appeals the trial court's judgment in favor of Laura L. Bone ("Respondent") in Appellant's suit against Respondent asserting claims involving the parties' limited liability company, Young in Spirit Adult Day Care, LLC (the "LLC"). After a three-day bench trial, the trial court entered judgment in favor of Respondent, finding that Appellant had breached the LLC's operating agreement by failing to make the required capital contribution and by soliciting purchase of his interest in the LLC by a third party without Respondent's consent; the court further found that Appellant had withdrawn from the LLC and that Respondent was the LLC's sole member. Appellant offers five points on appeal. Appellant argues that the trial court's judgment finding that Respondent was the sole member of the LLC because Appellant had withdrawn was against the weight of the evidence (Point I) and was a misapplication of the law (Point II). Appellant further asserts that the trial court's judgment finding that Appellant breached the LLC's operating agreement by failing to make the required capital contribution was against the weight of the evidence (Point III). And finally, Appellant contends that the trial court's judgment finding that he breached the LLC's operating agreement by discussing the sale of his interest in the LLC with a third party without Respondent's consent was a misapplication of the law (Point IV) and was against the weight of the evidence (Point V).
We affirm in part, reverse in part, and remand in part.
I. Factual and Procedural Background
The following facts were adduced at trial. The parties formed the LLC, an adult daycare business, in 2005. At that time, Appellant had a college degree and work experience in social work, while Respondent had a college degree and work experience in nursing. The parties signed the LLC's operating agreement on September 8, 2005. The operating agreement, in relevant part, states the following:
1. Members. The Members, who shall in all respects be equal, are LAURA L. BONE and PETER A. NICOLAZZI.
2. Profits and Losses. The net profits of the LLC shall be divided equally between the Members, and the net losses shall be borne by them in equal proportions. Distributions shall be made at such time or times and in such amount or amounts as the Members shall agree.
3. Capital. The Members shall contribute in equal amounts whatever amount of capital that the LLC may require from time to time for its investments and operations and that the Members shall unanimously agree in writing to contribute. Failure to make such contributions at the agreed date or prior to such time shall constitute an election to dissolve the LLC and shall have the same effect as a written notice of election to dissolve as specified below. The initial contributions agreed to are stated in Appendix A to this Agreement. Any withdrawals of capital from the LLC shall be such amounts and at such times as shall be agreed upon by the Members.
4. Management. The Members each shall individually be authorized to act on behalf of the LLC in the conduct of its operations as the LLC's agent. LAURA L. BONE shall be the "tax matters partner" (as defined in Section 6231(a)(7) of the Internal Revenue Code ) for all appropriate federal tax purposes and such matters in connection therein. The *368 Members shall have equal rights and responsibilities in the overall management policy of the LLC operations.
5. Voluntary Dissolution. Either Member may initiate a dissolution of the LLC after 30-days' written notice to the other Member, in which case the affairs of the LLC shall be wound up as soon as is reasonably possible and all remaining assets divided as provided for by law. The Members agree to prepare Articles of Dissolution once the winding up has occurred, and the LLC shall be dissolved upon the acceptance of same for filing by the Secretary of State.
6. Death or Involuntary Dissolution. If one Member dies or other events of dissolution as specified by law occur, the remaining Member (or, if no Members remain, the personal representative or representatives of the Members) shall wind up the affairs of the LLC and file Articles of Dissolution as above specified for an event of voluntary dissolution.
7. Non-Assignability of Membership Interest. Neither of the Members shall, without the written consent of the other Member, sell, assign, pledge, mortgage, or otherwise transfer [his] [her] interest in the LLC....
11. Applicable Law. The LLC and this Agreement shall be governed by the laws of the State of Missouri.
However, the LLC's operating agreement notably lacks any language establishing what constitutes "withdrawal" by a member or dictating the amount or method for determining the amount to be paid to a member who withdraws from the LLC. In Appendix A, which is referenced within paragraph 3 of the operating agreement, the parties also agreed to contribute an initial amount of $50,000 each; however, no due date was ever set for when the parties were required to pay this amount. According to James Sailor ("Sailor"), a certified public accountant who prepared the LLC's annual tax returns and financial statements, Respondent contributed $59,250 cash to the business in the years following execution of the operating agreement (and had therefore satisfied her capital contribution requirement), but Appellant had only contributed $25,700 to the business during that time (and had therefore not fulfilled his capital contribution requirement). Additionally, Sailor further identified non-cash/start-up contributions from Respondent in the amount of $5,380 and from Appellant in the amount of $5,365.
Immediately following the formation of the LLC, the parties were the business's only workers. Appellant mainly performed tasks associated with providing service to the LLC's customers, including transportation, preparing meals, organizing activities, cleaning, and other basic responsibilities. Respondent primarily performed managerial and nursing duties, which included completing office work, managing the business's finances, paying bills, handling medical licensing, and handling Medicaid paperwork and billing. As the business progressively expanded, Respondent's duties grew, while Appellant's tasks were increasingly handled by employees that the business had hired.
In the spring of 2011, Appellant approached a competitor about buying his interest in the LLC, notwithstanding the operating agreement's provision that prohibited sale, assignment, pledge, mortgage, or other transfer to a third party without the other LLC member's approval; Appellant did not seek Respondent's permission to inquire about a buyer for his share of the LLC. As time went on, the parties' business relationship steadily deteriorated. On April 30, 2011, Appellant effectively stopped participating in the operation of the business, while Respondent continued as the business's sole operator. On June *369 20, 2011, Respondent filed articles of incorporation with Missouri's Secretary of State for "Young in Spirit Adult Day Center, Inc.," and notified Appellant on June 21, 2011, that the adult daycare business would continue under this new entity and that she would be dissolving the LLC.
On June 30, 2011, Appellant filed his three-count petition against Respondent, naming himself and the LLC as plaintiffs. In his Count I, Appellant requested a declaratory judgment determining whether Respondent was still a member of the LLC and whether she had misappropriated LLC funds and resources for her personal use and for creation of the new business entity. Appellant further asked the trial court to order Respondent to reimburse Appellant for distributions of profits that Appellant claimed exceeded Respondent's fifty percent share and for any funds that Respondent had used for her own personal use and creating the new business entity. In his Count II, Appellant requested that the court order Respondent to provide a complete accounting of the LLC's accounts and those of the new business entity. And in his Count III, Appellant asked the court to establish and impose a constructive trust for the losses, expenses, and damages that Respondent owed to Appellant for his interest in the LLC. In Respondent's amended counterclaim, Respondent asserted four counts asking that the trial court enter judgment against Appellant and find that he was no longer a member of the LLC because Appellant: breached the LLC's operating agreement by failing to make his required capital contribution (Count I); breached the LLC's operating agreement by failing to perform his management duties (Count II); breached the LLC's operating agreement by soliciting purchase of his interest in the LLC by a third party without Respondent's consent (Count III); and fraudulently misrepresented to Respondent and the LLC the amount of his capital contribution (Count IV).
Both parties waived their right to a jury trial. During a three-day bench trial, testimony was given by Appellant, Respondent, Sailor, and S. Todd Burchett ("Burchett"), a certified public accountant whom Appellant had retained as a forensic expert in accounting and business valuation. In sum, both Appellant and Burchett testified that Appellant had met his required capital contribution and that Appellant had continued to contribute financially; these statements were contradicted by both Respondent's and Sailor's testimony. Additionally, both parties testified that Appellant had approached Respondent in the spring of 2011 about leaving the LLC, but their versions of events differed: Appellant claimed that Respondent eventually excluded him from the business, while Respondent testified that Appellant gradually became less involved in the business on his own volition. In addition to testimony, the LLC's business plan, operating agreement, and numerous financial records, tax returns, statements, and other business-related documents were admitted into evidence. Trial concluded on October 9, 2012.
On November 1, 2017, the trial court entered judgment in favor of Respondent and against Appellant; the court also granted Respondent's request that the LLC be dismissed as a party to the action since Appellant and Respondent had effectively abandoned all pleading and proof regarding the LLC as a party. In its judgment, the court found that Appellant had breached the LLC's operating agreement by failing to make the required capital contribution and by soliciting purchase of his interest in the LLC without Respondent's consent, and that Appellant's actions constituted "events of withdrawal" as referenced in Missouri's Limited Liability Company Act. The trial court concluded *370 that Appellant was no longer a member of the LLC, that Respondent was the sole member and owner of the LLC, and that Appellant had been paid all salary and distributions owed to him by the LLC. Appellant's motion for a new trial and/or amend the judgment was subsequently denied.
This appeal follows.
II. Standard of Review
"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Ivie v. Smith, 439 S.W.3d 189, 198-99 (Mo. banc 2014) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976) ). This standard of review is applied in all types of court-tried cases, regardless of the burden of proof at trial. Day v. Hupp, 528 S.W.3d 400, 411 (Mo. App. E.D. 2017).
III. Discussion
The LLC's operating agreement and Missouri's limited liability company statutes
Because all of Appellant's points on appeal depend upon the application of the LLC's operating agreement and Missouri's limited liability company statutes,[1] it is necessary to establish how they interact in this case before analyzing the merits of Appellant's arguments.
"A limited liability company is a creature of statute and its corresponding rights and obligations are derived from statute." Hibbs v. Berger, 430 S.W.3d 296, 313 (Mo. App. E.D. 2014). Section 347.081.1 establishes that:
The member or members of a limited liability company shall adopt an operating agreement containing such provisions as such member or members may deem appropriate, subject only to the provisions of sections 347.010 to 347.187 and other law. The operating agreement may contain any provision, not inconsistent with law, relating to the conduct of the business and affairs of the limited liability company, its rights and powers, and the rights, powers and duties of its members, managers, agents or employees...."[2]
"Member" is defined by statute as "any person that signs in person or by an attorney in fact, or otherwise is a party to the operating agreement at the time the limited liability company is formed and is identified as a member in that operating agreement...." Section 347.015(11).
While limited liability companies are creatures of statute, "[w]e interpret an L.L.C.'s operating agreement according to the ordinary rules of contract law." McGuire v. Lindsay, 496 S.W.3d 599, 607 (Mo. App. E.D. 2016). The primary rule of contract interpretation is to determine the intent of the parties and to give effect to that intent. Health Care Found. of Greater Kansas City v. HM Acquisition, LLC, 507 S.W.3d 646, 656 (Mo. App. W.D. 2017). In interpreting an operating agreement, we apply the plain and ordinary meaning of the words in the agreement and consider the document as a whole. McGuire, 496 S.W.3d at 607. "Additionally, each term of a contract is construed to avoid rendering other terms meaningless."
*371 Health Care Found of Greater Kansas City, 507 S.W.3d at 656. Further, "[i]t is the most basic principle of contract law that parties are bound by the terms of the contracts they sign and courts will enforce contracts according to their plain meaning, unless induced by fraud, duress, or undue influence." Guller v. Waks, 550 S.W.3d 505, 509 (Mo. App. E.D. 2017). Where a contract's terms are clear and unambiguous, we enforce the agreement as written and will not supply additional terms. McGuire, 496 S.W.3d at 607.
In this case, paragraph 1 of the LLC's operating agreement states: "The members, who shall in all respects be equal, are LAURA L. BONE and PETER A. NICOLAZZI." The operating agreement does not establish any further conditions or prerequisites that a party must meet to become a member of the LLC. As Appellant is named as a member of the LLC in the operating agreement and signed the operating agreement when the LLC was formed, he was a member of the LLC from that point onward. See § 347.015(11). Thus, it is clear that both Appellant and Respondent were the only members of the LLC throughout the business's existence.
On appeal, Appellant asserts several points related to (A) whether Appellant breached the operating agreement, and (B) whether Appellant withdrew from the LLC because of his actions prior to the filing of his petition. Due to the specificity of the trial court's findings and the complicated interplay between the LLC's operating agreement and Missouri's limited liability company statutes in this case, we address these broader issues in turn rather than directly addressing Appellant's points on appeal.
A. Whether Appellant breached the LLC's operating agreement
Appellant argues in several of his points on appeal that the trial court erred in finding that he breached the LLC's operating agreement. Specifically, he argues that the trial court's finding that he breached the operating agreement by failing to make his initial capital contribution was against the weight of the evidence, and that the trial court's finding that he breached the operating agreement by discussing the sale of his interest in the LLC with a third party without Respondent's consent was a misapplication of law and was against the weight of the evidence. The two provisions of the LLC's operating agreement that Appellant allegedly breached in this case were paragraphs 3 and 7, which we will address individually.
i. Paragraph 3- Capital
Paragraph 3 of the LLC's operating agreement (entitled "Capital") states that "[t]he Members shall contribute in equal amounts whatever amount of capital that the LLC may require from time to time for its investments and operations and that the Members shall unanimously agree in writing to contribute." Paragraph 3 goes on to establish that the parties agreed to contribute "initial contributions" of $50,000 each, as stated in Appendix A. However, no deadline was ever stated in the operating agreement or in Appendix A for when the "initial contributions" were to be made, and neither party testified that a due date had been agreed to otherwise.
At trial, evidence was presented by Respondent demonstrating that she contributed her initial capital contribution approximately five months after the operating agreement was executed; Appellant did not contest that Respondent had fulfilled her initial capital contribution obligation. However, the parties presented staggeringly different amounts when providing evidence of how much capital Appellant had contributed: Appellant and Burchett, Appellant's expert witness, testified that Appellant had *372 contributed $49,225 cash to the business and $30,046 in non-cash capital/start-up contributions ($79,271 total) during the five years between formation of the LLC and when Appellant filed his petition, while Sailor testified that Appellant had only contributed a total of $31,065 during that time span.[3]
It is clear the trial court believed Sailor's testimony, that Appellant had only contributed $31,065 over the course of five years and had therefore failed to meet his initial capital contribution requirement, over the testimony of Appellant and Burchett. "Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witness." Cerna-Dyer v. Dyer, 540 S.W.3d 411, 415 (Mo. App. W.D. 2018). In its judgment, the trial court even went so far as to justify its determination that Sailor's testimony was more credible and reliable than that of Appellant and Burchett by recognizing the inconsistencies and shortcomings in Appellant's purported contributions and that Burchett's expert opinion was given based upon those flawed facts. Specifically, the trial court noted that "[i]t was difficult at best, impossible at worst, to sort out [Appellant's] personal finances from company business." We defer to the trial court's findings of fact in a court-tried case. Women's Care Specialists, LLC v. Troupin, 408 S.W.3d 310, 316 (Mo. App. E.D. 2013). This includes the trial court's credibility determinations of witnesses, as the trial court is in a better position "to judge directly not only the demeanor of witnesses, but also their sincerity, character, and other trial intangibles that the record may not completely reveal." Day, 528 S.W.3d at 412.
Accordingly, because the trial court found that Appellant only contributed approximately $31,065 during the LLC's five-year existence based on Sailor's detailed testimony, the court's conclusion that Appellant breached the LLC's operating agreement by failing to fulfill his required initial capital contribution was not against the weight of the evidence. "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." S.S.S. v. C.V.S., 529 S.W.3d 811, 816 (Mo. banc 2017). And even though there was no deadline in the operating agreement or Appendix A for when the parties were required to make the initial capital contributions, we need not analyze the meaning of the word "initial" as used in the operating agreement here. At trial, it was established that both parties intended and understood that "initial," as used in "initial capital contribution," meant that the agreed-upon amount of $50,000 would be paid within six months of the execution of the LLC's operating agreement; as such, we give effect to that intent. See Patterson v. Rough Rd. Rescue, Inc., 529 S.W.3d 887, 893 (Mo. App. E.D. 2017) ("The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent."). Further, under any definition of the word "initial," Appellant's failure to make the required $50,000 capital contribution within a five-year time span, as the trial court found, undoubtedly constitutes breach of the operating agreement. Miken Tech., Inc., v. Traffic Law Headquarters, P.C., 494 S.W.3d 609, 611 (Mo. App. E.D. 2016) ("The law implies a reasonable time to perform where no time limit is fixed by *373 contract."). As such, we find that the trial court's conclusion that Appellant breached the LLC's operating agreement by failing to make his required initial capital contribution was not against the weight of the evidence, and affirm the trial court's judgment in this regard.
ii. Paragraph 7
Paragraph 7 of the LLC's operating agreement states that "[n]either of the Members shall, without the written consent of the other Member, sell, assign, pledge, mortgage, or otherwise transfer [his] [her] interest in the LLC." Neither the operating agreement nor Missouri's limited liability company statutes define the prohibited actions in paragraph 7 ("sell," "assign," "pledge," "mortgage," or "transfer"). At trial, Respondent presented evidence that Appellant discussed the potential sale of Respondent's interest in the LLC with a third party, notwithstanding the terms of paragraph 7; Appellant testified that the discussion was to gauge interest in his share of the LLC. Appellant did not seek Respondent's permission to discuss the potential sale of his interest with the prospective buyer. Neither party disputes these aforementioned facts. The trial court concluded that Appellant "attempting to sell his interest in the business to a third party without [Respondent's] written consent" constituted a breach of the LLC's operating agreement. We find that this conclusion is an erroneous application of the law.
Upon a plain reading of paragraph 7, we find that the parties were prohibited from the actual listed actions-i.e., from selling, assigning, pledging, mortgaging, or otherwise transferring their interests-without the other member's written consent. See Leonberger v. Mo. United Sch. Ins. Council, 501 S.W.3d 1, 8 (Mo. App. E.D. 2016) (stating that, when interpreting a contract, "we rely on the plain and ordinary meaning of the words in the contract and consider the document as a whole"). The verbiage used in paragraph 7 indicates that the parties intended to prohibit one another from conveying their interests in the LLC without the other member's permission. See Health Care Found. of Greater Kansas City, 507 S.W.3d at 656 ("The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent."). It is undisputed that Appellant did not ever actually perform any of the listed actions; rather, Respondent argued before the trial court that Appellant breached the operating agreement by soliciting purchase of his interest in the LLC by a third party without Respondent's written consent. Neither Paragraph 7 nor any other provision of the operating agreement prohibits (or even addresses) a member's attempt to sell or discussion of the sale of his interest. "An interpretation that inserts language into a contract is forbidden. In interpreting the contract we must be guided by the well-established rules that we cannot make contracts for the parties or insert provisions by judicial interpretation." Nooter Corp. v. Allianz Underwriters Ins. Co., 536 S.W.3d 251, 282 (Mo. App. E.D. 2017). While the operating agreement clearly establishes that a member may not sell or otherwise transfer his interest without the other member's written consent, the operating agreement does not necessitate that a member receive the other member's consent before soliciting purchase of his interest by a prospective buyer. As the operating agreement unequivocally lacks such language, we find that the trial court's conclusion that Appellant breached the operating agreement by attempting to sell his interest in the business to a third party without Respondent's written consent was an erroneous application of the *374 law. We therefore reverse the trial court's judgment on this issue.
B. Whether Appellant withdrew from the LLC and Respondent is the LLC's sole member
Appellant further argues on appeal that the trial court erred in entering judgment in favor of Respondent finding that Appellant's actions constituted an "event of withdrawal" under Missouri's limited liability company statutes and finding that Respondent is the LLC's sole member. Specifically, Appellant argues that the trial court's finding that he withdrew was against the weight of the evidence and was a misapplication of Missouri's limited liability company statutes.
Section 347.121.1 states that "[a] member may withdraw from a limited liability company at the time or upon the events specified in writing in the operating agreement, or at any time upon giving ninety days' prior written notice of withdrawal to the other members...." In this case, the LLC's operating agreement lacks any mention of "withdrawal" or what constitutes an "event of withdrawal," and Appellant did not give 90 days' written notice (or any written notice) to Respondent that he was withdrawing from the LLC. Thus, § 347.121.1 does not apply. Section 347.123 proceeds to list additional "events of withdrawal," which includes assignment of a member's entire interest in the LLC, expulsion as a member in accordance with the operating agreement, among other conditions that were not present here before Appellant filed his petition in the circuit court. In finding that Appellant withdrew from the LLC, the trial court seemingly relied on §§ 347.121 and 347.123 when it concluded that Appellant's actions of failing to make his required initial capital contribution, attempting to sell his interest in the LLC, and leaving the LLC in April of 2011 constituted "events of withdrawal."[4] This conclusion is incorrect, and is an erroneous application of §§ 347.121 and 347.123.
Despite the actions that Appellant may have taken preceding the filing of his petition in this case, the operating agreement is silent on what constitutes an "event of withdrawal," and Appellant's actions do not match those named in either §§ 347.121 or 347.123 that constitute "withdrawal" or an "event of withdrawal" from an LLC. While we affirm the trial court's finding that Appellant breached the operating agreement by failing to make his initial capital contribution, that breach does not constitute Appellant's withdrawal under the operating agreement or Missouri's limited liability company statutes. As such, the trial court erroneously applied the law in finding that Appellant's actions of failing to make his required initial capital contribution, attempting to sell his interest in the LLC, and leaving the LLC in April of 2011 constituted "events of withdrawal" from the LLC. We therefore reverse the trial court's judgment in regards to its determination that Appellant withdrew from the LLC prior to Appellant filing his petition in this case. Consequently, because Appellant (a) was clearly a member of the LLC pursuant to paragraph 1 of the LLC's operating agreement, and (b) did not withdraw pursuant to the operating agreement or the governing statutes prior to Appellant's filing of his petition, we also find that Appellant was still a member of the LLC at the time he filed his petition in the circuit court, and reverse the trial court's determination *375 that Respondent is the sole member of the LLC.
However, we find that, as a matter of law, Appellant may have withdrawn from the LLC by actually filing his petition in the circuit court in this case.[5] Section 347.123(4)(c) lists the following as an "event of withdrawal": "[u]nless otherwise provided in the operating agreement or by the specific written consent of all members at the time, the member ... [f]iles a petition or answer seeking for himself any reorganization, arrangement, composition, readjustment, liquidation, or similar relief under any statute, law or regulation...." Because this issue was not before (and thus not decided by) the trial court, we remand this case with instructions for the trial court to determine whether Appellant's filing of his petition constitutes an "event of withdrawal" pursuant to § 347.123(4)(c). We further find that the LLC's operating agreement does not state the amount or method for determining the distribution to be paid to a member who withdraws from the LLC. Thus, if the trial court determines that Appellant's filing of his petition does constitute an "event of withdrawal" pursuant to § 347.123(4)(c), the court is further instructed to determine the "fair value" of Appellant's interest in the LLC as of the date of withdrawal (the date that Appellant filed his petition), pursuant to § 347.103.2.
IV. Conclusion
We find that the trial court's conclusion that Appellant breached the LLC's operating agreement by failing to make his required initial capital contribution is not against the weight of the evidence; as such, we affirm the trial court's judgment on that matter. However, we find that the trial court erroneously applied the law in finding that Appellant breached the LLC's operating agreement by discussing the sale of his interest with a third party without Respondent's consent and in finding that Appellant withdrew from the LLC prior to the filing of his petition. Because we find that Appellant did not withdraw from the LLC prior to the filing of his petition, we consequently also find that the court erred in finding that Respondent was the sole member of the LLC. We reverse the trial court's judgment in regards to these aforementioned issues. Finally, as a matter of law, although we find that Appellant's actions preceding the filing of his petition do not constitute withdrawal under the LLC's operating agreement or Missouri's limited liability company statutes, we find that Appellant's actual filing of his petition may itself constitute an "event of withdrawal" pursuant to § 347.123(4)(c). We thus remand the case to the trial court with instructions to determine if Appellant withdrew pursuant to § 347.123(4)(c), and if he did, to determine the "fair value" of his interest in the LLC at the time of withdrawal (the date that Appellant filed his petition) pursuant to § 347.103.2.
Kurt S. Odenwald, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

All references to "Missouri's limited liability company statutes" are to Title XXIII, Chapter 347 of the Missouri Revised Statutes (entitled "Limited Liability Companies-Merger and Consolidation of Business Organizations").

All references are to Mo. Rev. Stat. Cum. Supp. 2012.

Specifically, Sailor testified that Appellant had contributed $25,700 cash and $5,365 in additional non-cash capital/start-up contributions.

The trial court specifically stated that "[Appellant's] actions in breach of the agreement, as aforesaid, and his leaving the LLC on April 30, 2011, to be 'events of withdrawal' as referenced in the Limited Liability Company Act."

"This Court applies de novo review to questions of law decided in court-tried cases." Shomaker v. Dir. of Revenue, 504 S.W.3d 84, 86 (Mo. App. E.D. 2016).