

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

MICHELLE LYNN SPORLEDER, )
)
Respondent, )
)
v. ) WD85008
)
PATRICK GREGORY SPORLEDER, ) Opinion filed: October 25, 2022
)
Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI
THE HONORABE J. HASBROUCK JACOBS, JUDGE**

Division One: W. Douglas Thomson, Presiding Judge,
Alok Ahuja, Judge and Edward R. Ardini, Jr., Judge

Patrick Gregory Sporleder ("Husband") appeals from the judgment of dissolution ("Judgment") of his marriage to Michelle Lynn Sporleder ("Wife"), entered in the Circuit Court of Boone County, Missouri ("trial court"). Husband raises six points on appeal, claiming the trial court erred in (1) "awarding Wife's membership interest in Atkes Properties LLC [(the LLC)] to Husband," (2) "crediting to Wife unreimbursed marital expenses in the amount of -$44,431.50," (3) awarding Husband $160,000 in bonus income from "bonus(es) 1st, 2nd, 3rd quarter with 4th quarter "true up[,]"" (4) "finding that each parties' household goods and personal property were

separate property with no value," (5) "awarding half of the MFS Heritage Trust SEP retirement assets [(MFS Heritage Trust assets)] to Wife," and (6) "finding that the 2009 BMW was gifted to the parties' son on his 16th birthday and the 2012 VW GTI was gifted to the parties' daughter on her 16th birthday[.]"  We affirm in part, and reverse and remand in part.

### Factual and Procedural Background[1]

Husband and Wife were married on May 18, 1991.  The parties had four children together, all emancipated at the time of trial.  In June of 2020 the parties separated, and Wife filed her Petition for Dissolution of Marriage on June 17, 2020, with Husband timely filing his Answer and Counter-Petition for Dissolution of Marriage.  Trial was held on July 23, 2021, and the following evidence was adduced.

Husband is a family practitioner for Capital Regional Medical Center ("Capital Regional"), and Wife is in product management at IBM Watson Health.  In June of 2004, the parties formed the aforementioned LLC for the purpose of "[m]aintaining and leasing property for rental purposes."  The LLC owns two buildings, with Husband operating his practice out of one of the buildings. The LLC was owned entirely by the parties, with Wife having a 60% ownership interest and Husband a 40% interest.  The LLC operated under an operating agreement.

As part of his employment, Husband has a contract with Capital Regional and is compensated based on a relative value unit ("RVU") mechanism.  This consists of

---

[1] "'We view the evidence in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences.'"  *Reichard v. Reichard*, 637 S.W.3d 559, 567 n.1 (Mo. App. W.D. 2021) (quoting *Collins v. Collins*, 586 S.W.3d 282, 286 n.1 (Mo. App. W.D. 2019)).

2

a base salary with bonuses in the form of RVU incentives, and based on the RVUs, Husband receives a quarterly compensation package "with a percent withheld that then is trued up at the end of the contract year, which is the end of April[,]" and payment is made in May. During the marriage, this compensation was one source of income for the family. Wife is familiar with the average amount and timing of Husband's bonuses due to their history of filing joint income tax returns, and she stated Husband makes between $150,000 to $170,000 in bonuses each year.

The parties also had a joint checking account to which they both contributed during the marriage, but following the parties' separation Husband stopped contributing to this account. As a result, Wife was left solely responsible for all activity in the account and for paying certain marital expenses and extensive pre-separation marital debt. Husband eventually began assisting with the house payments on the marital home but conditioned such upon the marital home being listed for sale. To pay expenses, Wife used marital funds from the joint account, incurred credit card debt, and borrowed from a child. Wife submitted a summary of these various "unreimbursed marital expenses" that excluded her personal expenses but included recurring payments, along with supporting documentation.

Husband's girlfriend began living with him soon after the separation. Husband testified she reimbursed him in cash for some expenses.

On February 28, 2021, Husband and Wife entered into a stipulation ("Stipulation") in which they agreed on the value of certain assets and liabilities for use at trial on March 11, 2021. This trial date was ultimately continued to July, 2021

3

and the Stipulation was utilized to value certain assets at the July trial. Listed within the Stipulation was the MFS Heritage Trust retirement asset in Husband's name with a stipulated value of $417,252.39.

Both Husband and Wife provided multiple documents that listed household goods and personal property as part of the marital estate, but the parties disputed the value of several of these items. In Wife's Statement of Property and Debt, she listed a 2009 BMW and a 2012 VW GTI as being gifted to two of the children. Husband included these cars as part of the marital estate in his Statement of Property and Liabilities. The children use their respective cars almost exclusively. The parties' names are on the titles.

On August 19, 2021, the trial court entered its Judgment. The trial court awarded the LLC entirely to Husband, noted "a historical distaste of leaving marital property vested in the parties as tenants in common after dissolution absent a compelling reason[,]" and ultimately "[found] no compelling reason to leave [the LLC] vested jointly in the parties after dissolution." Additionally, the trial court awarded Wife "unreimburse[d] marital expenses" as a debt owed to her from Husband in the amount of $44,431.50. The trial court found "[Husband] engaged in marital misconduct which substantially shifted additional burdens upon [Wife] as his financial partner."

Husband was also credited $160,000 in "Bonus(es) 1st, 2nd, 3rd quarter with 4th quarter 'True-up'[.]" With respect to the parties' household goods and personal property, the trial court awarded the parties the items in their possession and

4

adopted Wife's valuation of those items, referring to "Court's Exhibit No. 2" in doing so. However, Court's Exhibit No. 2 listed no value with respect to these items. In its division of the retirement accounts, the trial court split the MFS Heritage Trust assets equally between the parties using its value listed in the Stipulation. This retirement account was titled in Husband's name alone. Lastly, the trial court did not include the 2009 BMW nor the 2012 VW GTI in its division of marital property, instead finding the BMW and VW were gifted to the parties' son and daughter on their sixteenth birthdays, respectively, and awarding said assets to said children.

Husband timely filed a post-trial motion pursuant to Rules 75.01 and 78 ("post-trial motion"), which the trial court denied.[2] Husband now appeals. Additional facts will be provided as necessary, below.

## Standard of Review

"In a dissolution case, this Court will affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Steele v. Steele*, 423 S.W.3d 898, 904 (Mo. App. S.D. 2014) (citing *Jennings v. Jennings*, 327 S.W.3d 21, 23 (Mo. App. E.D. 2010)).

Concerning the specific issue of property division within a dissolution, such a division "'is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption.'" *Id.* at 905 (quoting *Souci v. Souci*, 284 S.W.3d 749, 755 (Mo. App. S.D. 2009)). "[T]he trial court is vested with broad discretion in classifying, valuing, and dividing marital property in a dissolution

---

[2] All rule references are to Missouri Supreme Court Rules (2018).

proceeding, and an appellate court will interfere with the trial court's decision only if it constitutes an abuse of discretion." *S.M.S. v. J.B.S.*, 588 S.W.3d 473, 485 (Mo. App. E.D. 2019) (citations omitted). "'The trial court abuses its discretion only when its ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration."'" *Steele*, 423 S.W.3d at 904 (quoting *Souci*, 284 S.W.3d at 754). "Moreover, if reasonable persons can differ about the propriety of the trial court's decision, then it cannot be said the trial court abused its discretion." *S.M.S.*, 588 S.W.3d at 485 (citing *Torrey v. Torrey*, 333 S.W.3d 34, 36 (Mo. App. W.D. 2010)). "The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case." *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo. App. W.D. 2000) (citing *Finnical v. Finnical*, 992 S.W.2d 337, 343 (Mo. App. 1999) and *Gendron v. Gendron*, 996 S.W.2d 668, 673 (Mo. App. 1999)).

We note that "in reviewing a court-tried dissolution case, our Court is predominately concerned with the correctness of the trial court's ruling rather than the route taken to reach it." *S.M.S.*, 588 S.W.3d at 485 (citing *McQueen v. Gadberry*, 507 S.W.3d 127, 132, 138 (Mo. App. E.D. 2016)). As such, "'we are obliged to affirm if we determine that the trial court reached the correct result, regardless of whether the trial court's proffered reasons are wrong or insufficient.'" *Id.* (quoting *McQueen*, 507 S.W.3d at 132, 138). We address Husband's six points on appeal in order, but discuss Points II, III, and IV together as they suffer from the same fatal defect.

6

**Point I**

In his first point on appeal, Husband argues the trial court "erroneously declared and applied the law" when it awarded Wife's membership interest in the LLC to Husband because such an award "violated [the LLC] operating agreement and § 347.081 RSMO[] resulting in an inequitable division of the marital estate in violation of § 452.330 RSMO."[3]  We disagree.

"In interpreting an LLC's operating agreement, we apply the ordinary rules of contract law."  *Chadwick v. Huntoon*, 634 S.W.3d 832, 839 (Mo. App. S.D. 2021) (citation omitted).  We are to "ascertain the intent of the parties and give effect to that intent."  *Id.*  (citation omitted).  However, "[w]e rely on the plain and ordinary meaning of the words in the contract and consider the document as a whole."  *Id.* (alteration in original) (quoting *McGuire v. Lindsay*, 496 S.W.3d 599, 607 (Mo. App. E.D. 2016)).  "'An interpretation that inserts language into a contract is forbidden.  In interpreting the contract we must be guided by the well-established rules that we cannot make contracts for the parties or insert provisions by judicial interpretation.'" *Nicolazzi v. Bone*, 564 S.W.3d 364, 373 (Mo. App. E.D. 2018) (quoting *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 282 (Mo. App. E.D. 2017)).

Here, the LLC was owned entirely by the parties, with Wife having a 60% ownership interest and Husband having a 40% ownership interest.[4]  Husband argues that a court-ordered transfer of Wife's membership interest to Husband violates section 4 of the LLC's operating agreement, which states:

---

[3] All statutory citations are to RSMo 2016 as currently updated, unless otherwise noted.
[4] Evidence indicated the disproportionate ownership was for business reasons.

4.  ASSIGNMENT OF INTERESTS IN COMPANY.  The Units, and any interest in the Units,[5] may not be sold, conveyed, transferred, pledged or assigned, voluntarily or involuntarily (including by operation of law or otherwise), except in accordance with the provisions of this section.  Any attempt to sell, convey, transfer, pledge or assign any interest in the Units in violation of this Agreement or any applicable state or federal law shall be void and of no effect.

In turn, he argues the court violates section 347.081.[6]  However, in his argument Husband overlooks section 4.c. of the operating agreement, which plainly states that this section 4 does not apply to transfers of membership interests between members: "This Section 4 shall not apply to initial admission of Members pursuant to Section 3 of this Agreement **or to transfers of Units between existing Members of the Company**." (emphasis added).

We acknowledge that the plain and ordinary meaning of the term "involuntarily" as used within section 4 includes court-ordered transfers.  *See Witte v. Beverly Lakes Inv. Co.*, 715 S.W.2d 286, 291-92 (Mo. App. W.D. 1986). Nevertheless, section 4.c. makes clear that this restriction on involuntary transfers is of no consequence because section 4 does not apply to member-to-member transfers. Absent explicit language prohibiting court-ordered transfers between members, we cannot find that the trial court in any way violated the operating agreement; to do so would be to "'insert provisions by judicial interpretation[,]'" which we are prohibited

---

[5] According to section 3.a. of the operating agreement, "Units" are the divided "interests in the Company of each Member[.]"

[6] Husband specifically cites the following sections of section 347.081:

2.  It is the policy of sections 347.010 to 347.187 to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements.

3.  The operating agreement shall be enforceable at law or in equity by any member to the extent provided in applicable law.

from doing. *Nicolazzi*, 564 S.W.3d at 373 (quoting *Nooter Corp.*, 536 S.W.3d at 282). Consequently, there can also be no violation of section 347.081, as nothing in the operating agreement itself was violated.[7]

Moreover, "[w]e acknowledge that this district has a historical distaste of leaving marital property vested in the parties as tenants in common after dissolution absent a compelling reason." *Thomas v. Thomas*, 76 S.W.3d 295, 303 n.4 (Mo. App. W.D. 2002) (citations omitted); *see also In re Marriage of Accurso*, 234 S.W.3d 556, 557-58 (Mo. App. W.D. 2007) (judgment reversed in part where the property division awarded Wife title to the building which housed Husband's law firm because the "division [did] not accomplish the policy intended by Section 452.330 of reducing the need for further litigation between the parties by severing all relations between the parties"). The trial court gave similar reasoning when it found "no compelling reason to leave [the LLC] vested jointly in the parties after the dissolution." This precedent is instructive,[8] and this case serves as a classic example as to why this principle is emphasized.

During her testimony, Wife stated she wanted Husband to be awarded the LLC. She offered multiple reasons for so desiring, including her inability to afford

---

[7] Husband attempts to support his argument by citing an Illinois appellate court case, *In re Marriage of Schlichting*, 19 N.E.3d 1055, 1066 (Ill. App. Ct. 2014). Not only is this case not binding upon us, but it is also not applicable. There, unlike the situation here, "[t]he trial court abused its discretion in ordering a property distribution that would require [a party] *to violate the terms of the operating agreement* where it could have easily and equitably avoided doing so." *Id.* at 1068 (emphasis added).

[8] We recognize Husband's point that the caselaw supporting this position deals specifically with tenants in common issues. However, it also stands for the more general proposition that "except in the most unusual case, a complete division of marital property should be achieved in the dissolution decree." *In re Marriage of Farquhar*, 719 S.W.2d 456, 458 (Mo. App. W.D. 1986). This includes member interests of LLCs wholly-owned by the parties to a marriage.

the building when it is not solvent, as compared to Husband who can subsidize the building through his bonuses, as well as Husband being "physically on site" to handle problems with the building. But most importantly, Wife stated,

> I don't want to see him. I don't want to be tied to him in any way, shape, or form. And yes, the lease is with Capital Region, but he has been there through multiple employers, that is where his office is located. I don't want to have any association.

Indeed, Wife testified to the management struggles she had with Husband during the pendency of the case, and she further stated it would "[a]bsolutely not" be a viable option for her and Husband to remain equal owners of the LLC. Such testimony reflects why there is such a judicial distaste for leaving marital property jointly vested in parties, and provides ample support for the wise decision of the trial court to award Wife's membership interest to Husband. Accordingly, we find no error. Point I is denied.

**Points II, III, and IV**

Points II, III, and IV each allege the trial court erred because there was no substantial evidence supporting each of the three trial court's decisions. In Point II, Husband argues it was an abuse of discretion and there was no substantial evidence to support the trial court "crediting to Wife unreimbursed marital expenses in the amount of -$44,431.50[.]" In Point III, Husband claims "[t]he trial court erred in awarding Husband 'bonus(es) 1st, 2nd, 3rd quarter with 4th quarter "true up"' in the amount of $160,000 . . . ." because "it was an abuse of discretion and there was no substantial evidence to support it in that there was no evidence that Husband earned 2021 bonus income in the amount of $160,000.00 and the parties were not married

10

for the entirety of 2021. And, in Point IV, he argues "[t]he trial court erred in finding that each parties' household goods and personal property were separate property with no value . . . ." because "there was no substantial evidence to support" the finding.

Regarding all three points, Husband has failed to properly argue his not-supported-by-substantial-evidence challenge.[9]

> "Substantial evidence is evidence that, if believed, has some probative force on each fact necessary to sustain the trial court's judgment." Evidence is considered to have probative force when it has a tendency to make a material fact more or less likely. When our Court reviews whether the trial court's decision is supported by substantial evidence, we view the evidence and inferences therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. In addition, because the trial court is free to believe any, all, or none of the testimony and other evidence presented at trial, we defer to the trial court's credibility determinations. Ultimately, the trial court's judgment is supported by substantial evidence when "the evidence and inferences favorable to the challenged proposition have probative force upon the proposition and constitute evidence from which the trier of fact can reasonably decide that the proposition is true."

*S.M.S.*, 588 S.W.3d at 484-85 (internal citations omitted) (quoting *Day v. Hupp*, 528 S.W.3d 400, 411 (Mo. App. E.D. 2017)). To bring such a challenge, Husband must:

> (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; and (3) demonstrate why that supporting evidence, when considered with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

---

[9] We also note these points are multifarious in violation of Rule 84.04(d), as they contain multiple allegations of error. *See In re Marriage of Adams*, 414 S.W.3d 29, 33 (Mo. App. S.D. 2013) (citation omitted). While such points preserve nothing for appellate review, an appellate court may exercise its discretion to review the points *ex gratia* if "the deficiencies do not impede [the court's] disposition on the merits . . . ." *Id.* (citations omitted). We choose to address these points with regard to the failed sufficiency of evidence claims unless otherwise noted.

11

*Hopkins v. Hopkins*, 449 S.W.3d 793, 803 (Mo. App. W.D. 2014) (quoting *Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 303 (Mo. App. W.D. 2014)). "Failure to follow the applicable framework means the appellant's argument is analytically useless and provides no support for his or her challenge." *Adams*, 414 S.W.3d at 34 (citation omitted).

Here, Husband has failed to follow the required framework by not identifying all of the favorable evidence, instead focusing chiefly on his conflicting evidence. *See Hopkins*, 449 S.W.3d at 803. "'[A]ny citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence.'" *Id.* (alteration in original) (quoting *Sauvain*, 437 S.W.3d at 303).

As to Point II, Husband argues there was no substantial evidence to support the trial court "crediting to Wife unreimbursed marital expenses in the amount of -$44,431.50," claiming that crediting "Wife this amount in unreimbursed marital expenses

> double-counted marital expenses as a negative asset to Wife and as a marital debt to Wife, it ignored Wife's use of a joint bank account to pay marital expenses following separation, it ignored Husband's contributions to marital expenses following separation, and the funds no longer existed at the time of trial, resulting in an inequitable division of the marital estate in violation of § 452.330 RSMO.

While Husband briefly acknowledges the trial court's finding that Wife submitted documents supporting her claim, that he stopped making deposits to the joint account following separation, and that Wife was solely responsible for paying

12

the marital expenses after separation, he ignores the remainder of the evidence which supports the finding. In addition to not addressing all the favorable evidence, Husband also failed to discuss why this favorable evidence is lacking in probative value when considered with the reasonable inferences drawn therefrom. As such, Husband's argument is analytically useless. *Adams*, 414 S.W.3d at 34 (citation omitted). Point II is denied.

As to Point III, Husband claim there was no substantial evidence to support awarding Husband 'bonus(es) 1st, 2nd, 3rd quarter with 4th quarter "true up"' in the amount of $160,000 . . . ." suffers the same defect. Husband did not discuss Wife's testimony that he receives the quarterly compensation "with a percent withheld that then is trued up at the end of the contract year, which is the end of April. Payment's generally made in May." Husband also failed to account for his own testimony where he stated Wife was correct in this description of the timing and frequency of the bonuses and true-up. Additionally, Wife testified she was familiar with the average annual bonus amount of between $150,000 and $170,000, and the timing of Husband's bonuses. Not only did Husband fail to identify this favorable evidence, but he also failed to demonstrate why this favorable evidence is lacking in probative value when considered with the reasonable inferences drawn therefrom. Such failures render Husband's argument analytically useless.[10] *Id.* (citation omitted). Point III is denied.

---

[10] Further, we find that the favorable evidence prevents us from holding that the trial court abused its discretion. The trial court was free to believe Wife's testimony and evidence over Husband's, and "we defer to the trial court's credibility determinations." *S.M.S.*, 588 S.W.3d at 485 (internal citations omitted) (citing *Day*, 528 S.W.3d at 411). As such, we believe the trial court could have found

Lastly, in Husband's Point IV, he argues "[t]he trial court erred in finding that each parties' household goods and personal property were separate property[11] with no value . . . ." because "there was no substantial evidence to support" the finding and the trial court "erroneously applied the law" because it "failed to include the summary of personal property identified as Court's Exhibit 1, and it was uncontested the household goods and personal property were acquired during the marriage . . . ."[12] He argues this "result[ed] in an inequitable division of the marital estate in violation of § 452.330 RSMO." We disagree.

We begin with Husband's argument that the trial court erroneously applied the law, finding it without merit. "[E]rroneous declaration or application of the law is not itself sufficient to justify reversal." *Lollar v. Lollar*, 609 S.W.3d 41, 47 (Mo. banc 2020). Reversible error is found "only when it materially affects the merits of the action with a 'firm belief that the decree or judgment is wrong[,]'" meaning that a party must show both error and prejudice. *Id.* (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); citing Rule 84.13(d) and *Murrell v. State*, 215 S.W.3d 96, 109-10 (Mo. banc 2007)).

from the evidence that Husband's contracts end in April, and that he earned $160,000 in bonus income from the end of the previous contract year to the end of the 2021 contract year, May 2020 to April 2021. Notably, Husband's point conveniently ignores any discussion of the contract year and the interplay between it and his bonus payments. Also, Husband argues that Wife's testimony concerning his average annual bonuses is inconsistent with a W-2 admitted in evidence reflecting his compensation in 2020. That W-2 does not distinguish, however, between Husband's base salary and any bonuses; the only evidence concerning his base salary to which Husband refers is his own Income and Expense Statement, which the trial court was not required to believe. We further note that Husband raises additional issues in his argument, but because these were not raised in his Point Relied On, we need not consider them. *See Alberswerth v. Alberswerth*, 184 S.W.3d 81, 96 (Mo. App. W.D. 2006) (citation omitted).

[11] This reference to "separate" property clearly references what is referred to as "nonmarital" property in section 452.330.

[12] Though multifarious, we elect to address Husband's claims in this Point IV.

Both parties acknowledged at trial that household goods and personal property would be characterized as marital property. The trial court recognized this when it stated in its Judgment, "[t]he remainder of the *marital estate* consists of motor vehicles, bank accounts, retirement accounts, *personal property*, debts and other claims as summarized on Court's Exhibit '1,' attached hereto and incorporated by reference." (emphasis added). While the trial court failed to attach Exhibit 1 to its Judgment, it did include Exhibit No. 2, which listed a category for household goods and a separate category for personal property. The trial court awarded the parties the items in their respective possession, but nowhere does the trial court designate these items as "separate", i.e. nonmarital, property within these categories.

Husband argues that because "0.00" is listed as the value under the separate property columns in relation to these categories, the trial court designated this property as "separate," i.e. nonmarital property. For each category of property in Court's Exhibit No. 2, one column is provided for the value of Husband's marital property and a similar column is provided for Wife's marital property. Likewise, there is a column for the value of Husband's separate, or nonmarital, property, and one for Wife's separate, nonmarital, property. Within *every* category of property in Court's Exhibit No. 2 there is a similar "0.00" designation under Husband and Wife's separate property columns. This is true *even in those categories* where a value was assigned under their respective marital property columns. Thus, if we follow Husband's argument to its logical end, this would mean the trial court designated *every* category of property as "separate", or nonmarital, property, in some part. We

15

reject this was the trial court's intention as the evidence was clear, and the parties stipulated, they possessed only marital property. Rather, it is clear that the trial court simply failed to include a valuation for the household goods and personal property categories in Court's Exhibit No. 2 in the columns intended to be used for marital property.

This failure to include a valuation is not error. "The trial court *is not required* to specifically determine the value of particular items of marital property as long as evidence from which the value of the marital property can be determined appears in the record." *Dunnagan v. Dunnagan*, 239 S.W.3d 181, 187 (Mo. App. S.D. 2007) (citing *Svejda v. Svejda*, 156 S.W.3d 837, 840 (Mo. App. 2005) and *Waldon v. Waldon*, 114 S.W.3d 428, 431 (Mo. App. 2003)); *see also Coleman v. Coleman*, 318 S.W.3d 715, 725 (Mo. App. E.D. 2010) (citing *Travis v. Travis*, 163 S.W.3d 43, 47 (Mo. App. W.D. 2005)). Here, there is significant information on the record from which the value of the parties' household goods and personal property can be determined, including the parties' testimony and multiple exhibits received into evidence. In its judgment, the trial court specifically adopted Wife's valuation of these items, awarding the parties the household goods and personal property in their respective possession in accordance with Court's Exhibit No. 2. While it is true Court's Exhibit No. 2 included no value with respect to these items, sufficient evidence of their value appeared in the record.[13]

---

[13] *Compare with Coleman*, 318 S.W.3d at 725 (holding trial court's division of marital property that awarded spouse certain household items would not be disturbed where, even though no specific value was assigned to those items, the record contained "abundant testimony about the items and their provenance").

16

We also find Husband's not-supported-by-substantial-evidence challenge fails for the same reason as in Points II and III. Not only is his challenge inherently flawed by his misunderstanding of the trial court's classification of this property in Court's Exhibit No. 2, but his argument is analytically useless due to his failure to follow the applicable framework explained above. *Adams*, 414 S.W.3d at 34 (citation omitted). Specifically, Husband focuses largely on contrary evidence, which is irrelevant and immaterial for our purposes, and he also fails to perform the required analysis demonstrating how all the favorable evidence is so lacking in probative value when considered with the reasonable inferences drawn therefrom. Accordingly, Point IV is denied. In concluding our discussion of Points II, III, and IV, we also note Husband forgets marital property may be divided unequally, which is especially noteworthy here, where the trial court found Husband "engaged in marital misconduct which substantially shifted additional burdens upon [Wife] as his financial partner."

**Point V**

In Point V, Husband argues it was an abuse of discretion and against the weight of the evidence when the trial court "award[ed] half of the [MFS Heritage Trust assets] to Wife," claiming "Wife received a greater benefit of the retirement assets' appreciation from the February 28, 2021 stipulation to the subsequent trial on July 23, 2021, resulting in an inequitable division of the marital estate in violation of § 452.330 RSMO." We disagree.

An against-the-weight-of-the-evidence claim "presupposes there is sufficient evidence to support the judgment, and our Court will reverse the judgment under this

17

standard of review only in rare cases when we have a firm belief the trial court's decision is wrong." *S.M.S.*, 588 S.W.3d at 485 (citing *Day*, 528 S.W.3d at 411-12). "[W]e defer to the trial court's findings of fact when the factual issues are contested and when the facts as found by the trial court depend on credibility determinations." *Id.* (quoting *Day*, 528 S.W.3d at 412). However, with this type of claim, "we can consider evidence contrary to the trial court's judgment that is not based on a credibility determination." *Id.* (quoting *Day*, 528 S.W.3d at 412).

> A trial court's judgment is against the weight of the evidence only if the court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable, although different conclusions, we must defer to the trial court's assessment of that evidence.

*Id.* (quoting *Day*, 528 S.W.3d at 412). Husband must do the following to properly raise this type of claim:

> (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Hopkins*, 449 S.W.3d at 802 (quoting *Sauvain*, 437 S.W.3d at 304). "Failure to follow the applicable framework means the appellant's argument is analytically useless and

18

provides no support for his or her challenge."[14] *Adams*, 414 S.W.3d at 34 (citation omitted).

Here, Husband has disregarded the analytical framework required to make his against-the-weight-of-the-evidence challenge. Instead, he has focused on how the trial court valued and divided the MFS Heritage Trust assets, and claimed the trial court made no findings regarding the rationale for its award of half the MFS Heritage Trust assets to Wife. Husband simply claims the "division of the parties' retirement accounts unduly favors Wife and skews the division of marital property in her favor." In doing so, Husband also ignores that "[t]he division of marital property need not be equal[.]" *Nelson*, 25 S.W.3d at 517 (citations omitted). Husband fails to address the parties' testimony regarding the MFS Heritage Trust assets, and though he discusses the Stipulation he does not acknowledge that it was the *only* evidence of value presented as to the retirement assets. Indeed, Husband's trial counsel conceded during post-trial arguments that no evidence had been presented regarding any changes in the values of such asset since the valuation in March 2021. Without evidence showing that the value of the MFS Heritage Trust assets had changed, and in what amount, it would be impossible for this Court to conclude that Husband had been prejudiced by any error in relying on the Stipulation, and if so, to what extent.

---

[14] Husband's point claims error in the trial court's *division* of the MFS Heritage Trust assets. We make this point because in his argument, Husband discusses another alleged error that was not raised in his Point Relied On. "An appellate court need not consider issues raised in the argument portion of a brief that are not raised in the point relied on." *Alberswerth*, 184 S.W.3d at 96 (citation omitted). As such, we only address Husband's claim pertaining to the division of the MFS Heritage Trust assets.

Further, Husband does not adequately explain how this could possibly be a greater benefit to her. The trial court, using the *only* value of the MFS Heritage Trust assets presented in evidence, awarded half to Husband and the other half to Wife.[15] Here, Husband has not provided any other explanation why the trial court's division of this retirement asset was in error. Regardless, we do not see how an *equal* split of *one* of these retirement assets gives Wife a greater portion of *all* of the retirement assets' appreciation, nor how such a division skews the division of the marital property in Wife's favor. [16] Consequently, we do not find the trial court abused its discretion in its division of these assets. Point V is denied.

**Point VI**

In Point VI, Husband argues the trial court erred in finding that the 2009 BMW and the 2012 VW GTI were gifted to the parties' son and daughter, respectively, on each of their 16th birthdays. Husband argues there was no substantial evidence to support that either vehicle was ever gifted to either child.[17] We agree.

---

[15] Notably, Husband's complaint only concerns this particular retirement asset, even though other retirement asset valuations were included in the Stipulation and awarded *using such stipulated valuations*. Presumptively, Husband took this approach because the trial court awarded the other retirement accounts in line with the titled owner but did not do so with the MFS Heritage Trust assets, which was titled in Husband's name alone. Regardless, "[r]etirement benefits are considered marital property and are subject to division in a dissolution proceeding, [except in certain situations not applicable here]." *Valentine v. Valentine*, 400 S.W.3d 14, 24 (Mo. App. E.D. 2013) (citing *Garrison v. Garrison*, 255 S.W.3d 37, 42 (Mo. App. W.D. 2008)).

[16] In his Point V and other points, Husband attributes the trial court's error to its "verbatim adoption of Wife's proposed Judgment of Dissolution and accompanying division of marital property and debts." We find this argument has no merit. *If* the trial court did adopt verbatim Wife's proposed Judgment of Dissolution, it is not per se reversible error. *See Pickering v. Pickering*, 314 S.W.3d 822, 830 (Mo. App. W.D. 2010). "Although the verbatim – or near verbatim – adoption of a party's proposed judgment is strongly disapproved of, to do so is not per se reversible error and does not alter this court's standard of review." *Id.*

[17] We have previously addressed our standard of review as to sufficiency of the evidence in addressing Points II, III, and IV.

Section 301.210 outlines the procedural requirements for transfer of ownership of a motor vehicle. Under Missouri law, the transfer or gift of an automobile mandates "rigid[] enforce[ment] and absolute[] compli[ance]" with the requirements of section 301.210. *Panettiere v. Panettiere*, 945 S.W.2d 533, 541 (Mo. App. W.D. 1997) (citation omitted); *see also Tinger v. Tinger*, 709 S.W.2d 123, 124 (Mo. App. E.D. 1986). Because Missouri is a strict title state, "'the assignment of the certificate of title in the manner provided by the statute is the *exclusive* and *only* method of transferring title to a motor vehicle, whether the transfer is made . . . by way of sale or *gift*. . . .'" *Panettiere*, 945 S.W.2d at 541 (quoting *Metro Auto Auction v. Dir. of Revenue*, 707 S.W.2d 397, 403 (Mo. banc 1986)). Although trial courts maintain discretion in distribution of marital property, a vehicle titled to a husband and/or wife cannot be distributed to a third party. *Id*. Thus, to prevail on his no substantial evidence argument, Husband must show that the trial court's award of said vehicles to third parties occurred when there was no substantial evidence to indicate said vehicles were titled to said third parties. He does so.

Husband supports his claim through the parties' testimony that both spouse's names, and not those of the children, were on the titles of the vehicles. Further, he argues that although the parties disputed ownership of the two vehicles at trial, neither party testified that the motor vehicles were gifts to the children.[18] In

---

[18] The only evidence supporting transfer was Wife's Statement of Property and Debt wherein it was noted that the BMW was "SONS CAR – bought as a 16th Birthday gift!" and VW was "DAUGHTER'S CAR bought and gifted." This alone is not enough to meet compliance with Missouri's statutory requirements because the transfer requirements mandated under section 301.210 are not met. *Panettiere*, 945 S.W.2d at 541.

*Panettiere*, we applied the strict title standard to overturn an assignment of vehicles to divorcing parties' children and held that vehicles titled in husband's name were not gifts to the parties' daughters because there had been no valid assignment of title in compliance with the statutory requirements. *Id*. at 540-41. The same is true here, where Husband testified that his and Wife's names were on the titles of the vehicles at the time of dissolution. Further, though the parties acknowledged the children were the primary drivers of said vehicles, this testimony is not sufficient evidence to allow the court to assign the vehicles to the children as third parties in the dissolution. *See Tinger*, 709 S.W.2d at 124.

We therefore reverse the trial court's award of the BMW and VW to the parties' son and daughter, respectively, and remand for distribution of the cars among Husband and Wife, at the discretion of the court. Given the minimal value of these vehicles in relation to the overall marital estate, distribution of these additional marital assets between the parties will not require any *other* adjustments to the trial court's property division.

## Conclusion

We reverse the judgment with respect to Point VI and remand for proceedings consistent with this opinion. In all other aspects, the judgment is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.